UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:14-cv-449

THOMAS CASSELL                                                                                          Plaintiff

v.

MEGAN J. BRENNAN, Postmaster General                                                Defendant

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendant Megan J. Brennan's, the current Postmaster General for the United States Postal Service, Motion for Summary Judgment. (Docket No. 30.) Plaintiff Thomas Cassell has responded, (Docket No. 35), and Defendant has replied, (Docket No. 39). Fully briefed, this matter is ripe for adjudication. For the reasons enumerated below, the Court will DENY Defendant's Motion.

Factual Background

The Plaintiff Thomas Cassell is a former employee of the United States Postal Service. (Docket No. 30-1 at 1.) The Defendant Megan Brennan is the current Postmaster General for the United States Postal Service ("Postal Service"). (Docket No. 39 at 1 n.1) This dispute arises from the Postal Service's decision to terminate Mr. Cassell's employment. (Docket No. 1 at 2-3.) Mr. Cassell has brought a claim for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a), alleging that the Defendant fired him in retaliation for his previous filing of an EEOC Complaint. *Id.* at 2.

Prior to his termination, Mr. Cassell worked for the Postal Service as a Postal Support Employee ("PSE") Tractor Trailer Operator at the Louisville Processing & Distribution Center ("PD&C") in Louisville, Kentucky.[1] (Docket No. 30-1 at 2.) On November 11, 2011 at 4:10 a.m., Mr. Cassell was working as a "hustler driver" and was tasked with moving tractor trailers from the PD&C to a central parking lot. *Id.* Specifically, Mr. Cassell was to move the trailers located at doors 25, 26, and 27 from the PD&C West Dock to the central parking lot. *Id.* The Postal Service contends that when Mr. Cassell began to move the trailer located at door 25, the dock plate was still inside. *Id.* As a result, according to the postal service, the dock plate and two "All Purpose Containers" fell out of the back of the trailer to the ground. *Id.* However, Mr. Cassell contends that the dock plate at door 25 was "permanently attached to the building and did not fall to the ground." (Docket No. 35 at 2.) Mr. Cassell alleges that only the two pieces of

---

[1] The Parties dispute whether or not Mr. Cassell was within his 90 probationary period as a PSE Tractor Trailer Operator at the time of his termination. According to Mr. Cassell, he began working at the Postal Service on August 15, 2008, and the Postal Service never informed him that he would undergo another 90 day probation period when he entered his new position as a PSE Tractor Trailer Operator in 2011. (Docket Nos. 35 at 1-3; 35-1 at 1.) Mr. Cassell contends that he was not a probationary employee at the time of his termination. (Docket No. 35 at 3.) Mr. Cassell was not hired as a PSE until August 6, 2011, (Docket Nos. 28 at 92; 39 at 6), and the Postal Service terminated Mr. Cassell's employment on November 23, 2011, (Docket No. 28 at 103). The position of PSE was a newly created position that "came into being effective May 23, 2011 with the new National Collective Bargaining Agreement between the U.S. Postal Service and the American Postal Workers Union (APWU)." (Docket No. 39 at 5; *see also* Docket No. 39-2 at 3.) The Collective Bargaining Agreement stipulates that PSEs are not to be hired for terms longer than 360 calendar days per appointment. (Docket No. 28 at 123.) Furthermore, according to the Collective Bargaining Agreement,

> PSEs may be disciplined or removed within the term of their appointment for just cause and any such discipline or removal will be subject to the grievance arbitration procedure, provided that within the immediately preceding six months, the employee has completed ninety (90) work days, or has been employed for 120 calendar days, whichever comes first.

(Docket Nos. 28 at 134; 39-2 at 3.) It appears from the Collective Bargaining Agreement that PSEs are a separate and distinct employment classification. Therefore, it also appears that the Postal Service is correct that Mr. Cassell was subject to a 90 probationary period during his second appointment of employment with the Postal Service but his first as a PSE. (Docket No. 39 at 6.) As Mr. Cassell had not completed 90 actual work days nor had he been employed 120 days since his appointment, he was still within his probationary period when the Postal Service terminated his employment. (Docket No. 39 at 6.) Therefore, the Postal Service did not need "just cause" for his termination.

2

equipment fell to the ground. *Id.* He also claims that the postal service equipment involved in the incident did not sustain any damage. *Id.*

A dock technician on duty at the time of the incident, Todd Ludwig, stated that someone opened the trailer after he had secured the items in the trailer and closed the trailer door prior to Mr. Cassell's moving it. (Docket No. 28 at 108.) He also noted that two wire cages that he had secured earlier in the trailer were gone. *Id.* According to Mr. Ludwig, fifteen to twenty minutes elapsed between the time that he secured the trailer and informed Mr. Cassell it was ready to be moved and when the incident occurred *Id.* In an email, Bernard Porter, the acting supervisor at the time of the incident, informed Jeffery Vogel, the transportation manager who made the final decision to terminate Mr. Cassell, that Mr. Ludwig had taken responsibility for the incident. (Docket No. 35-3 at 1.)

However, despite Mr. Ludwig's acceptance of responsibility, the Postal Service is adamant that it is in fact Mr. Cassell who bears the responsibility for the incident, as he did not follow standard operating procedure. The relevant portions of the "Trailer Movement" Standard Operating Procedure guidelines provided in the record are as follows:

> Before the dock tech, terminal supervisor or MVS Supervisor calls for a trailer move, the dock plate will be removed, the overhead trailer and dock door will be closed. The mailhandler will be responsible to make sure the straps are in place and the contents secured. If this is not done, the hustler driver will call the supervisor and advise them of such.
>
> When a trailer move is called, a hustler driver will un-chock the wheels of the trailer and while doing so will look between the back of the trailer and the dock pad to insure the doors are closed and the dock plate is out.

(Docket No. 28 at 57.) The Postal Service contends that Mr. Cassell did not follow standard operating procedure, as he did not "check the trailer door *immediately* before moving the equipment." (Docket No. 30-1 at 3 (emphasis added).) Alternatively, Mr. Cassell argues that he

3

did follow standard operating procedure because he checked all three trailers at doors 25, 26, and 27 "simultaneously" as they were all called to be moved simultaneously. (Docket No. 35 at 6.) Mr. Cassell recalls that approximately six minutes passed from the time he began to move the first trailer and when the incident occurred. *Id.* at 4. Mr. Cassell contends that as he checked all three trailers simultaneously, he followed standard operating procedure, and Mr. Ludwig is the person who was responsible for the incident. *Id.* at 6.

Following the incident, the Postal Service suspended Mr. Cassell's driving privileges and he was assigned to sort mail while awaiting a decision as to his employment. (Docket No. 30-1 at 2.) Loretta Kent, a supervisor at the Postal Service, held an evidentiary hearing with Mr. Cassell on November 14, 2011. (Docket Nos. 30-1 at 3; 28 at 83.) Following the evidentiary hearing, Mr. Vogel, the transportation manager, made the decision to terminate Mr. Cassell. (Docket No. 28 at 103.) On November 23, 2011 in a formal letter to Mr. Cassell, Mr. Vogel on behalf of the Postal Service terminated Mr. Cassell's employment citing an "unsatisfactory safety record" as the reason for his termination. *Id.*

In support of its conclusion that Mr. Cassell had an unsatisfactory safety record, the Postal Service recounts a similar event involving Mr. Cassell that allegedly occurred on June 30, 2010.[2] (Docket No. 30-1 at 4.) At the time of the earlier incident, Mr. Cassell was employed as a "casual motor vehicle operator." *Id.* The Postal Service explains that this was a temporary employee position. *Id.* As a casual motor vehicle operator, Mr. Cassell was tasked with making trips between the Air Mail Facility and the P&DC. *Id.*; *see also* Docket No. 30-2 at 4. On the day in question in 2010, Mr. Cassell was asked to take a load of mail to the Aynshire station. (Docket

---

[2] While Mr. Cassell contends that this earlier incident is irrelevant to his current claim for retaliation, (Docket No. 35 at 3), the Court disagrees as it involves similar conduct to the later incident at issue in this action.

4

Nos. 30-1 at 4; 30-2 at 4.) Mr. Cassell parked his truck and loaded the mail that was to be taken to the Aynshire station. The Postal Service recalls that the first batch of mail he loaded was contained in "rolling stock." (Docket No. 30-1 at 4.) After loading the mail packaged in the "rolling stock," another batch of mail was loaded into the truck. *Id.* Mr. Cassell allegedly did not secure the newly loaded mail with straps. *Id.* After checking for registered mail, Mr. Cassell simply got in the truck and pulled away from the loading dock. *Id.* He "did not secure the new mail or close the doors to the truck." *Id.* Consequently, three containers filled with mail allegedly fell onto the ground. *Id.* The fallen mail had to be collected off the ground and run through the mail processing machines again. (Docket No. 30-2 at 4.) According to the Postal Service, Mr. Cassell violated the standard operating procedure in place at the time because it required that a driver inspect the vehicle prior to departure to make sure that the rear door was locked and sealed. (Docket Nos. 30-1 at 4; 30-2 at 5-6.) Ordinarily, it is the policy of the Postal Service at the P&DC that when a casual employee has an at-fault accident, his employment is terminated. (Docket No. 30-2 at 5.) However, Mr. Vogel decided to offer Mr. Cassell a position outside of the Transportation section as a clerk. *Id.* The Postal Service contends that it relocated Mr. Cassell instead of terminating him because the PD&C needed mail processors badly, and he had been a good employee prior to the incident. *Id.* Consequently, on July 3, 2010, the Postal Service reassigned Mr. Cassell to the position of casual clerk. *Id.*

On October 15, 2010 following his reassignment after the first incident, Mr. Cassell filed a Complaint alleging discrimination on the basis of sex. (Docket Nos. 30-1 at 4; 30-2 at 1; 35 at 4.) On November 5, 2010, the Postal Service dismissed his Complaint in its entirety. (Docket No. 30-2 at 1.) Mr. Cassell then appealed the Postal Service's dismissal. The Office of Federal Operations ("OFO") and the Equal Employment Opportunity Commission ("EEOC") reversed

5

the dismissal and remanded the complaint to the Postal Service for an investigation into the matter. *Id.* On May 16, 2011, the Postal Service accepted the remanded claim and began an investigation. *Id.* On July 29, 2011, Mr. Cassell requested a hearing on the matter before an ALJ of the EEOC. *Id.* at 2. A hearing was held before an ALJ on February 23, 2012. *Id.* In a written opinion dated March 22, 2012, the ALJ concluded that Mr. Cassell "failed to establish by the preponderance of the evidence that the [Postal Service] discriminated against him." *Id.* at 8. The EEOC entered judgment in favor of the Postal Service. *Id.*

Mr. Cassell maintains that in retaliation for his aforementioned Complaint to the EEOC, the Postal Service terminated his employment using the incident in 2011 as an excuse for their unlawful termination of his employment.

Legal Standard

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

As the party moving for summary judgment, the Postal Service must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of Mr. Cassell's claims. Fed. R. Civ. P. 56(c); *see Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the Postal Service satisfies its burden of production, Mr. Cassell "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324). Keeping this standard in mind, the Court moves on to the merits.

## Discussion

Under Title VII, an employer cannot discriminate against an employee because that employee engaged in conduct protected by Title VII. *See* 42 U.S.C. § 2000e–3(a). Title VII prohibits employers from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C. § 2000e-3(a).

"As with a Title VII discrimination claim, a Title VII retaliation claim can be established either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (quoting *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 538 (6th Cir. 2008)) (internal quotation marks omitted). Direct evidence of retaliation is evidence that "if believed, *requires* the conclusion that unlawful retaliation was a motivating factor in the

7

employer's action." *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003) (emphasis in original) (citing *Laderach v. U-Haul of Northwestern Ohio*, 207 F.3d 825, 829 (6th Cir. 2000)). "[D]irect evidence proves the existence of a fact without any inferences or presumptions." *Id.* (alteration in original) (quoting *Norbuta v. Loctite Corp.*, 181 F.3d 102 (6th Cir. 1999)).

Here, Mr. Cassell seeks to establish a claim for retaliation not by direct evidence but rather by proffering circumstantial evidence. (Docket No. 35 at 4-7.) Mr. Cassell has not provided direct evidence because he has not produced any evidence that if believed would *require* the conclusion that retaliation was the motivating factor in the Postal Service's decision to terminate his employment. *See Abbott*, 348 F.3d at 542. Consequently, this Court must analyze his retaliation claim under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*. *See* 411 U.S. 792, 800-06 (1973). In order to establish a *prima facie* case of retaliation under Title VII, the plaintiff must show by a preponderance of the evidence that:

> 1) he engaged in activity that Title VII protects; 2) defendant knew that he engaged in this protected activity; 3) the defendant subsequently took an employment action adverse to the plaintiff; and 4) a causal connection between the protected activity and the adverse employment action exists

*Abbott*, 348 F.3d at 542 (first citing *Strouss v. Michigan Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001); then citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008).

If the plaintiff successfully establishes a *prima facie* case of retaliation, "a presumption of unlawful retaliation arises and the burden of production shifts to the defendant to rebut the

presumption by articulat[ing] some legitimate, nondiscriminatory reason for its action." *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 674 (6th Cir. 2013) (alteration in original) (quoting *Spengler v. Worthington Cylinders*, 615 F.3d 481, 492 (6th Cir. 2010)) (internal quotation marks omitted).

Then, if the defendant successfully produces a legitimate, nondiscriminatory reason, "the burden of production returns to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination." *Fuhr*, 710 F.3d at 675 (citing *Abbott*, 348 F.3d at 542). Importantly, "[w]hile the burden of production shifts throughout the *McDonnell Douglas* . . . framework, the burden of persuasion always remains with the plaintiff." *Id.* (citing *Abbott*, 348 F.3d at 542). To successfully establish that the defendant's proffered reason is mere pretext, the plaintiff must show by a preponderance of the evidence that the defendant's proffered reason "1) has no basis in fact; 2) did not actually motivate the adverse action; or 3) was insufficient to motivate the adverse action." *Abbott*, 348 F.3d at 542 (6th Cir. 2003) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). If the plaintiff does in fact show that the defendant's proffered reason is mere pretext, "then the fact finder may infer unlawful retaliation." *Id.* (first citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 344 (6th Cir. 1997); then citing *Virostek v. Liberty Township Police Dep't/Trustees*, 14 Fed. App'x. 493, 504 (6th Cir. 2001)). The Court will conduct an analysis using the *McDonnell Douglas* burden-shifting framework below.

With regards to Mr. Cassell's establishment of a *prima facie* case, the parties agree that he has satisfied the first three elements, as he engaged in a protected activity, the Postal Service was aware of the protected activity, and he suffered an adverse employment action. (Docket Nos. 30-1 at 9; 35 at 4.) However, the parties do not agree that Mr. Cassell has satisfied the fourth

element which requires that "a causal connection between the protected activity and the adverse employment action exist[]." *Abbott*, 348 F.3d at 542 (citations omitted).

According to the Sixth Circuit Court of Appeals, "[t]o establish the causal connection required in the fourth [element], a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (first citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997); then citing *Jackson v. RKO Bottlers*, 743 F.2d 370, 377 (6th Cir. 1984)). The Plaintiff's burden at the *prima facie* stage is "minimal, requiring the plaintiff to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence, providing it is credible." *Id.* at 566 (quoting *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)). A plaintiff may establish a causal connection and satisfy the fourth element using "[e]vidence of temporal proximity between the protected activity and the adverse employment action, coupled with other indicia of retaliatory conduct." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)

Here, there is sufficient temporal proximity between the Postal Service's decision to terminate Mr. Cassell and his filing and pursuit of his EEOC Complaint. Mr. Cassell's pursuit of his EEOC claim was ongoing at the time of his termination from the Postal Service. (*See* Docket No. 30-2 at 1-2.) Though the Postal Service completed its investigation into the matter in July 2011, Mr. Cassell pursued his claim before an ALJ of the EEOC. (Docket Nos. 30-1 at 10; 30-2 at 1-2.) He filed his request for a hearing before an ALJ on July 29, 2011. (Docket No. 30-2 at 2.) The ALJ did not hold a hearing or issue his final decision until after Mr. Cassell's termination from the Postal Service. (Docket No. 30-2 at 1-2, 11.) As Mr. Cassell's participation in a

protected activity under Title VII was ongoing at the time of his termination, there is temporal proximity.

Additionally, Mr. Cassell alleges that Keith Tucker, a Management Official with the Postal Service, "threatened not to renew [his] Casual Driving Position if [he] continued to pursue his EEO[C] complaints" after Mr. Cassell had filed his first EEOC Complaint. (Docket Nos. 35 at 4; 35-1 at 3.) This alleged comment coupled with the temporal proximity is sufficient for Mr. Cassell to satisfy the fourth element of a *prima facie* case. Mr. Tucker's alleged statement combined with the temporal proximity between Mr. Cassell's termination and his pursuit of his EEOC Complaint provides enough evidence for this Court "to deduce a causal connection between the retaliatory action and the protected activity." *Nguyen v. City of Cleveland*, 229 F.3d at 566 (quoting *Avery Dennison Corp.*, 104 F.3d at 861).

As Mr. Cassell has met his "minimal" burden and established a *prima facie* case, the Court must now turn to the Postal Service's stated reason for his termination. Once a plaintiff establishes a *prima facie* case, "the burden of production then shifts to the employer who must articulate a legitimate, nondiscriminatory reason for its actions." *Russell v. Univ. of Toledo*, 537 F.3d 596, 609 (6th Cir. 2008) (citing *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). Here, the Postal Service states that it terminated Mr. Cassell's employment due to his "unsatisfactory safety record." (Docket No. 28 at 159.) With regards to the 2011 incident, the Postal Service contends that Mr. Cassell did not follow standard operating procedure as he did not check the trailer at door 25 *immediately* before moving the trailer. (Docket No. 30-1 at 3 (emphasis added).) The Postal Service also points to the previous incident from 2010 to support its decision as it contends that the 2011 incident was the second time Mr. Cassell did not secure a

11

truck before pulling away from the dock. (Docket No. 30-1 at 11.) These two incidents, according to the Postal Service, resulted in Mr. Cassell's unsatisfactory safety record. *Id.*

Because the Postal Service has articulated a legitimate, nondiscriminatory reason for its actions, the burden shifts back to Mr. Cassell to demonstrate that the Postal Service's proffered reason is mere pretext and is not the true reason for its employment decision. *Russell*, 537 F.3d at 609. As previously stated, to demonstrate pretext, Mr. Cassell must show by a preponderance of the evidence that the Postal Service's proffered reason "1) has no basis in fact; 2) did not actually motivate the adverse action; or 3) was insufficient to motivate the adverse action." *Abbott*, 348 F.3d at 542 (6th Cir. 2003) (citing *Manzer,* 29 F.3d at 1084). Here, it is unclear through which of the aforementioned prongs Mr. Cassell seeks to establish pretext. (Docket No. 35 at 6.) However, after careful review of his arguments, it appears that Mr. Cassell attempts to prove pretext by arguing that the Postal Service's proffered reason has no basis in fact and was insufficient to motivate the adverse action. (Docket No. 35 at 3-4, 6.) The Court will only address Mr. Cassell's argument with regards to the first prong that the Postal Service's proffered reason has no basis in fact, as he establishes a genuine issue of material fact under this prong and that is sufficient for him to overcome the Postal Service's Motion for Summary Judgment.

According to the Sixth Circuit Court of Appeals, an argument involving the first prong that a defendant's reason has no basis in fact "is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are "factually false." *Singleton v. Select Specialty Hosp.-Lexington, Inc.*, 391 F. App'x 395, 400 (6th Cir. 2010) (quoting *Manzer*, 29 F.3d at 1084). Here, Mr. Cassell does not agree with the Postal Service that he violated standard operating procedure with regards to his actions on the night of the incident in question nor does he agree that he was responsible for the incident. (Docket No. 35 at 6.) Mr.

Cassell contends that he followed standard operating procedure when he checked the doors at 25, 26, and 27 simultaneously. *Id.* He argues that his adherence to the standard operating procedure is the reason that Todd Ludwig, the dock technician, took responsibility for the incident. *Id.* The acting supervisor, Bernard Porter, documented Mr. Ludwig's acceptance of responsibility for the incident in an email he sent to Mr. Vogel. (Docket No. 28 at 109.) Mr. Cassell states that as he followed standard operating procedure and another individual accepted responsibility for the incident, he did not in fact have an "unsatisfactory safety record," and the Postal Service's reason for his termination has no basis in fact. Because the parties disagree about whether or not Mr. Cassell followed standard operating procedure and who was at fault for the incident that occurred in 2011, they ultimately disagree about whether or not Mr. Cassell had an unsatisfactory safety record, the Postal Service's proffered reason for his discharge. Consequently, Mr. Cassell has provided sufficient evidence to demonstrate a genuine issue of material fact with regards to pretext and to survive the Postal Service's Motion for Summary Judgment.

## Conclusion and Order

For the aforementioned reasons, the Defendant's Motion for Summary Judgment is DENIED.

A **telephonic status conference and/or scheduling conference** is set for **June 23, 2016 at 2:00 PM Eastern**. The Court will place the call to counsel.

cc: Counsel

13