UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:14-CV-449-TBR

THOMAS J. CASSELL                                                                                           PLAINTIFF

v.

MEGAN J. BRENNAN, Postmaster General                                                    DEFENDANT

**Memorandum Opinion and Order**

This case is set for trial on October 18, 2016. In anticipation of that trial, the United States of America filed three motions in limine to exclude certain evidence or arguments by Plaintiff Thomas J. Cassell.[1] First, the United States moved to preclude evidence or argument that Plaintiff was not a probationary employee at the time of his termination. [DN 55.] Next, the United States moved to exclude evidence or argument that differently-situated employees are comparators. [DN 56.] Finally, the United States moved to exclude certain documents it claims were not properly disclosed during discovery. [DN 62.] After responses, replies, and supplements to the record by both parties, these motions are ripe for adjudication.

For the reasons explained below, Defendant's motion to preclude evidence or argument that Plaintiff was not a probationary employee [DN 55] is GRANTED, Defendant's motion to exclude evidence or argument that differently situated employees are comparators [DN 56] is GRANTED, and Defendant's motion to exclude Plaintiff's financial documents [DN 62] DENIED.

---

[1] The United States also filed a fourth motion, [DN 61], seeking to exclude the testimony of Lisa Cassell, Plaintiff's wife, and Charlie Watson. The Court denied that motion with respect to Lisa Cassell, [DN 74], and Plaintiff withdrew Charlie Watson as a potential witness, [DN 68]. Therefore, Defendant's motion to exclude witnesses [DN 61] is DENIED AS MOOT.

**Background**

The facts of this case are more fully set out in the Court's Memorandum Opinion and Order denying the United States' motion for summary judgment. [DN 44.] Plaintiff Thomas Cassell is a former employee of the United States Postal Service. [*Id*. at 1.] Defendant Megan Brennan is the current Postmaster General for USPS. [*Id.*] This dispute arises from USPS's decision to terminate Cassell's employment. [*Id*.] Cassell asserts that he was fired in retaliation for his previous filing of an EEOC complaint. [*Id*.] USPS contends that it terminated Cassell's employment because of his poor safety record as a truck driver for USPS, having twice driven away from a loading dock with the door of his trailer open. [*Id.* at 4.]

On June 30, 2010, Cassell, who was employed as a "casual motor vehicle operator," was tasked with transporting a load of mail between two USPS facilities. [*Id*. at 4.] However, when Cassell pulled away from the loading dock, the rear door of the truck he was driving was still open, and several containers of mail fell out of the truck. [*Id*. at 5.] Following this incident, Cassell was reassigned to the position of casual clerk. [*Id.*] Cassell then filed a complaint, alleging that he was discriminatorily reassigned on the basis of his gender. [*Id.* at 5.] Eventually, the Equal Employment Opportunity Commission concluded that USPS had not discriminated against Cassell. [*Id.* at 6.]

While Cassell's EEOC complaint was still pending, he began working as a Postal Support Employee ("PSE") Tractor Trailer Operator at USPS's Louisville, Kentucky Processing & Distribution Center ("P&DC"). [*Id.* at 2.] In the early morning of November 11, 2011, Cassell was working as a "hustler driver," moving tractor trailers from the P&DC to a central parking lot. [*Id.*] USPS contends that when Cassell began to move the third of three trailers he was assigned to relocate, the trailer's rear door was open, and two empty mail containers fell to the

ground. [*Id.*] The parties dispute whether Cassell bears responsibility for this incident. *See* [*Id.* at 3-4 (detailing parties' arguments).] Following USPS's internal investigation, Cassell was terminated on November 23, 2011. [*Id.* at 4.] Jeffrey Vogel, the USPS transportation manager who made the final decision to terminate Cassell, cited an "unsatisfactory safety record" as the reason for Cassell's termination. [*Id.*]

Cassell filed the instant suit on June 19, 2014, alleging that USPS terminated him in retaliation for filing the aforementioned EEOC complaint, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*. *See* [DN 1.] This Court denied USPS's motion for summary judgment, finding that Cassell presented a genuine issue of material fact with respect to the reason he was discharged. [DN 44 at 13.] A jury trial is set to begin in this case on October 18, 2016. The United States has filed three motions in limine to exclude certain evidence and arguments. Those motions will be discussed in turn.

**I. Defendant's Motion in Limine to Preclude Evidence or Argument That Plaintiff was not a Probationary Employee at the Time of His Termination**

At trial, Cassell intends to present evidence showing that USPS did not terminate other similarly situated employees who violated USPS's safety protocols. *See* [DN 48 at 4.] The United States has moved to prevent Cassell from presenting evidence or argument that he was not a probationary employee at the time of his termination by USPS. [DN 55.] Initially, through no fault of its own, the United States submitted a bare-bones motion to exclude this evidence based upon the Court's previous statement in its Memorandum Opinion and Order that Cassell "was still within his probationary period when the Postal Service terminated his employment." [DN 44 at 2, n. 1.] However, that statement was ultimately not essential to the Court's determination that Cassell presented a genuine issue of material fact with respect to the true cause of his termination. As such, that footnote was dicta, not holding. Courts "are not

3

necessarily bound by dicta should more complete argument demonstrate that the dicta is not correct." *Kirtsaeng v. John Wiley & Sons, Inc.*, __ U.S. __, 133 S.Ct. 1351, 1368 (2013). After the Court clarified that, in ruling on Defendant's motions, it was not bound by that dicta, the Court ordered the United States to supplement its motion with evidence and argument concerning Cassell's employment status. [DN 74.]

In its second motion, discussed below, the United States argues that Cassell should only be allowed to compare himself to other probationary employees. [DN 56.] Because Cassell is probationary, the government asserts, the actions USPS took towards non-probationary employees with similar safety records are irrelevant. [*Id*.] Of course, determining Cassell's employment status is a necessary prerequisite in determining the employees to whom Cassel may compare himself. Because Cassell's employment status is in issue, this motion [DN 55] is properly viewed as one asking the Court to make a finding that Cassell was a probationary employee, and not as a motion to exclude evidence or argument. The Court must make this finding before it can determine whether the evidence and argument to which the United States objects in its second motion, [DN 56], is admissible.

Whether a federal employee is probationary or non-probationary appears to be a question of law. *See Franks v. Nimmo*, 796 F.2d 1230, 1235 (10th Cir. 1986) (upholding district court's determination that, as a matter of law, Veteran's Administration doctor was probationary employee). The parties agree that the Collective Bargaining Agreement ("CBA") between USPS and the American Postal Workers Union governs this issue. They disagree, however, about which provision of the CBA is determinative. Cassell points to Article 12, Section 1 of the CBA, which states, "The probationary period for a new employee shall be ninety (90) calendar days." [DN 59-1 at 1.] If this was the applicable provision, Cassell would not be a probationary

4

employee, because his job as a PSE Tractor-Trailer Operator began on August 6, 2011, and he was terminated on November 23, 2011, more than ninety days later. [DN 59-2.]

The United States points to a different provision of the CBA, which it calls the "2011 PSE Memorandum to the collective bargaining agreement . . . ." [DN 66 at 1.] That provision states, in pertinent part:

> PSEs may be disciplined or removed within the term of their appointment for just cause and any such discipline or removal will be subject to the grievance arbitration procedure, provided that within the immediately preceding six months, the employee has completed ninety (90) work days, or has been employed for 120 calendar days, whichever comes first.

[DN 66-1 at 12.] Additionally, the Joint Contract Interpretive Manual, the document "provid[ing] a mutually agreed upon explanation on how to apply the contract to the issues addressed[,]" contains a virtually identical provision. [*Id*. at 15-16.] The United States further contends that Cassell worked only 81 days as a PSE Tractor-Trailer Operator, and because 120 calendar days had not elapsed since Cassell's appointment to that position on August 6, 2011, he was therefore a probationary employee. [DN 66 at 3-5; DN 78 at 3.]

Attached to his response to this motion, Cassell submitted a USPS document entitled "Notification of Personnel Action" which lists his job title, enter on duty date, and termination date. [DN 59-3.] The United States relies on that same document in making its argument that Cassell was a probationary employee. Thus, there is no dispute that Cassell was a PSE Tractor-Trailer Operator, that he began working in that position on August 6, 2011, and that he was terminated effective November 23, 2011. [*Id*.] With respect to Cassell's employment status, then, only issues left for the Court to determine are (1) which CBA provision applies to Cassell, and (2) whether Cassell fulfilled the terms of that provision.

5

Upon review of the CBA provisions cited by the parties, it appears that the "2011 PSE Memorandum" is the provision that governed Cassell's employment status. The CBA subjects PSEs to more stringent requirements than other, non-PSE USPS employees. Particularly, non-PSE employees gain non-probationary status after they have been employed for ninety calendar days. [DN 59-1 at 1.] Conversely, for a PSE to gain non-probationary status, the PSE must complete 90 work days, or be employed for 120 calendar days. [DN 66-1 at 12.] The plain terms of these two provisions contradict each other, and cannot be reconciled. On the face of the CBA, the 2011 PSE Memorandum applies specifically to PSEs. Cassell does not dispute that he was a PSE at the time of his termination, and he has not argued that the CBA provisions are ambiguous. Therefore, Cassell will only have achieved non-probationary status if, at the time of his termination, he had worked 90 days or had been employed as a PSE for 120 days.

Cassell's undisputed start date as a PSE was August 6, 2011. [DN 59-1 at 1.] Depending upon whether the last day is included, 120 days from that date would either have been December 3 or December 4, 2011. Cassell was terminated on November 23, 2011, [*id*.], so he was not employed as a PSE for 120 days. Furthermore, the United States has submitted the declaration of Mark Harvey, USPS Manager of Labor Relations for the Kentuckiana District, who attached to his declaration Cassell's weekly time sheets, as well as a list he complied of the days actually worked by Cassell. [DN 66-1 at 22-42.] Harvey lists eighty-one days that Cassell worked as a PSE. [*Id*. at 4, 22.] Cassell has not attempted to rebut this calculation. Instead, throughout this case, Cassell has simply argued that he was employed by USPS for longer than ninety days, and was therefore no longer a probationary employee. While Cassell had indeed been employed by USPS in various capacities prior to his appointment as a PSE, the USPS handbook provides, "Postal service employment in a casual or temporary status does not count toward completion of

6

a probationary period, even though such service may have immediately preceded the career appointment." [*Id*. at 20.] Cassell's prior work for USPS was as a "casual motor vehicle operator" and "casual clerk." [DN 44 at 5.] Therefore, his prior work did not count toward the completion of his probationary period as a PSE.

The United States has shown, and Cassell has failed to rebut, that Cassell was a probationary PSE at the time of his termination on November 23, 2011. Therefore, Defendant's motion in limine to preclude evidence or argument that Plaintiff was not a probationary employee [DN 55] is GRANTED.

## II. Defendant's Motion in Limine to Exclude Evidence or Argument that Differently Situated Employees Are Comparators

Having found that Cassell was indeed a probationary employee throughout his tenure as a PSE, the Court must now determine the employees to whom Cassell may compare himself. "[A] Title VII retaliation claim can be established either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (citation and internal quotation marks omitted). To ultimately prevail, Cassell must prove that "1) he engaged in activity that Title VII protects; 2) defendant knew that he engaged in this protected activity; 3) the defendant subsequently took an employment action adverse to the plaintiff; and 4) a causal connection between the protected activity and the adverse employment action exists." *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003) (citations omitted). Here, Cassell intends to prove that USPS's proffered reason for terminating his employment, his safety record, was merely a pretext for terminating him in retaliation for filing an EEOC complaint. One way that Cassell may do so is by showing that USPS did not terminate other similarly situated employees who had not filed EEOC complaints. The United States agrees that Cassell should be able to

make this argument, but contends he should only be allowed to compare himself to other probationary PSEs. After reviewing the supplements to the record provided by the United States, the Court agrees.

To be similarly situated, "the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects.'" *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796 (6th Cir. 1994) (emphasis added)). Specifically:

> to be deemed 'similarly-situated' in the disciplinary context, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."

*Elgabi v. Toledo Area Reg'l Transit Auth.*, 228 F. App'x 537, 541 (6th Cir. 2007) (quoting *Ercegovich*, 154 F.3d at 352 (6th Cir. 1998) (citations omitted)). The Sixth Circuit has "found probationary status to be a relevant consideration for the similarly-situated inquiry" on multiple occasions. *Id.* at 542 (citing *Cooper v. N. Olmsted*, 795 F.2d 1265, 1270-71 (6th Cir. 1986)).

As explained above, Cassell was a probationary PSE at the time of his termination. Potential comparators thus fall into four possible categories: probationary casual employees, non-probationary casual employees, probationary PSEs, and non-probationary PSEs. The United States has submitted two declarations from Mark Hulme, USPS Manager of Human Resources for the Kentuckiana District, explaining the differences between probationary and non-probationary employees, and between casual employees and PSEs. [DN 78-1; DN 83-1.] Probationary employees are not entitled to the application of progressive discipline, may be disciplined and removed without just cause, and may not avail themselves of certain grievance

8

procedures under the CBA. *See* [DN 78-1 at 3-4.] Conversely, non-probationary employees are entitled to progressive discipline, and just cause is required to terminate them. [DN 78-1 at 7-8.]

With respect to the comparison between probationary and non-probationary employees, the Sixth Circuit addressed a similar set of facts in *Cooper v. City of North Olmsted*. Lywanna Cooper, a female African-American bus driver filed a complaint with the Ohio Civil Rights Commission, alleging that her co-workers engaged in racial and sexual harassment directed towards her. 795 F.2d at 1266. Cooper was a newly-hired probationary employee, and both before and after her civil rights complaint, she was repeatedly cited for rules and safety violations. *Id*. at 1266-67. Eventually, the City terminated Cooper's employment, and she brought suit, alleging (among other things) that the City fired her in retaliation for filing discrimination charges, in violation of Title VII. *Id*. at 1267-68. The district court granted summary judgment in Cooper's favor on her Title VII claim, but the Sixth Circuit reversed, holding that "[t]he district court improperly compared the work records of [Lawrence] Sindalar, a permanent employee who was not discharged, and Cooper, a probationary employee who was discharged." *Id*. at 1271. In so holding, the Sixth Circuit wrote:

> A probationary period of employment permits a company to weed out or eliminate undesirable employees. The opportunity to dismiss more readily those new employees whose job performance is unsatisfactory is particularly important to [the City]. . . . Probationary bus drivers therefore do not stand on equal footing with permanent drivers, and cannot be considered to be similarly situated.

*Id*. at 1270-71 (internal citations omitted). Other circuits agree that probationary and non-probationary employees are not similarly-situated. *See, e.g.*, *Green v. New Mexico,* 420 F.3d 1189, 1195 (10th Cir. 2005) (two non-probationary employees not similarly situated to plaintiff, a probationary employee); *McKenna v. Weinberger,* 729 F.2d 783, 789 (D.C. Cir. 1984) (female probationary employee not similarly situated to male permanent employees).

The central dispute in this case is the cause of Cassell's termination, and the ease with which USPS could terminate Cassell's peers is certainly relevant in determining whether those peers are similarly situated to Cassell. The United States has shown, and Cassell has not rebutted, that probationary and non-probationary employees with USPS are subject to different standards of conduct, job protections, and disciplinary procedures. As the above-cited cases demonstrate, probationary and non-probationary employees are too different to provide the basis for an accurate comparison. Allowing Cassell, a probationary employee, to compare himself to non-probationary employees with greater employment protections would likely mislead the jury and unfairly prejudice the United States. At trial, Cassell may argue that he was treated differently than other similarly-situated employees, but he may use only probationary employees as comparators.

The United States also argues that Cassell should only be allowed to compare himself to other probationary PSEs, and not to non-probationary casual employees. Hulme's second declaration outlines the differences between PSEs and casual employees. *See* [DN 83-1.] When they existed, casual employees were subject to a ninety-day probationary period at the beginning of their initial appointment and for any subsequent appointment to a new craft. [*Id.* at 2.] In this respect, then, PSEs and casual employees are similar. However, the United States has pointed out several differences between probationary PSEs and non-probationary casual employees. Most importantly, with respect to non-probationary casual employees, USPS management had available a wide range of disciplinary options. [*Id.* at 6.] In addition to termination, casual employees "could be given a discussion or a letter of warning for lesser[,] more correctible errors or misconduct." [*Id.*] In contrast, the sole disciplinary remedy available to USPS with respect to probationary employees, including probationary PSEs, is termination. [*Id.* at 2.] Because

probationary PSEs were subjected to more stringent review, and USPS's disciplinary options were more limited, probationary PSEs and non-probationary casual employees are not "similar in all of the relevant aspects[,]" *Ercegovich.*, 154 F.3d at 352, and cannot be used as comparators.

Cassell has proffered the names of three comparator employees, Norman Neblett, Carrie Reynolds, and Gerald Smith.[2] [DN 69.] He has not, however, explained in any meaningful way how those employees' situations are comparable to his own. In his declaration, Harvey attached and summarized pertinent records from these employees' histories with USPS. *See* [DN 78-3.] Each of the three employees was a driver for UPS with one or more safety incidents on his or her record. *See* [*id.*] Reynolds and Smith were, at one time, casual employees. [DN 78 at 5.] Neblett was a PSE, but the United States claims that he was no longer on probation when he had two on-the-job accidents. [*Id.* at 6.] As explained above, only probationary PSEs are similarly situated to Thomas Cassell. Therefore, on the record before the Court, it appears that Reynolds and Smith, as casual employees, and Neblett, as a non-probationary PSE, are not appropriate comparators. Defendant's motion in limine to exclude evidence or argument that differently-situated employees are comparators is GRANTED. [DN 56.]

### III. Defendant's Motion in Limine to Exclude Exhibits

On September 15, 2016, Cassell filed his pretrial witness and exhibit list. [DN 50.] The United States objects to exhibits 21-24 on that list, Cassell's financial records, claiming that these documents were never disclosed or exchanged during discovery. [DN 62.] Cassell admits that these documents were not disclosed, but says that at least some of the documents were not available until the time that Cassell filed his witness and exhibit list. [DN 65.] Because the

---

[2] Cassell also proffered his own name in his list of comparators. [DN 69.] Presumably, Cassell intends to argue that the reason he was terminated after his second safety incident, but not his first, was his filing of an EEOC complaint. *See* [DN 80.] The United States has not objected to Cassell's use of himself as a comparator.

United States will not be unfairly prejudiced by the introduction of Cassell's financial records, its motion to exclude them [DN 62] is DENIED.

Cassell's pretrial witness and exhibit list includes, among other things, four proposed exhibits relating to Cassell's finances:

> 21. Federal Income Taxes for 2011 (Thomas Cassell only), 2012 (Thomas Cassell only), 2013 (Jointly Thomas Cassell & Lisa Cassell), 2014 (Jointly Thomas Cassell & Lisa Cassell), 2015 (Jointly Thomas Cassell & Lisa Cassell)
>
> 22. Paycheck stub of Thomas Cassell for 2011, pay period #22
>
> 23. Thomas Cassell back pay and front pay calculations
>
> 24. Most recent pay check stub

[DN 50 at 3.] The United States claims, and Cassell does not deny, that none of these documents were previously exchanged during discovery. As such, the United States moves to exclude each item under Federal Rules of Civil Procedure 26(a)(3)(A)(iii) and 37(c)(1). [DN 62 at 2-3.] Additionally, the United States claims that Cassell's 2013, 2014, and 2015 tax returns should be excluded, because they are joint returns including Lisa Cassell's income information, and her earnings are irrelevant to the plaintiff's case. [*Id.* at 4.]

Rule 26 provides, in pertinent part, "A party must provide to the other parties and promptly file . . . an identification of each document or other exhibit, including summaries of other evidence—separately identifying those items the party expects to offer and those it may offer if the need arises." Fed. R. Civ. P. 26(a)(3)(A)(iii). "[T]hese disclosures must be made at least 30 days before trial. Within 14 days after they are made . . . a party may serve and promptly file . . . any objection, together with the grounds for it, that may be made to the admissibility of materials identified under Rule 26(a)(3)(A)(iii)." Fed. R. Civ. P. 26(a)(3)(B). The Court's pretrial scheduling order directed the parties to comply with Rule 26(a)(3) with

respect to pretrial disclosure of witnesses and exhibits. [DN 46.] This matter is set for trial beginning on October 18, 2016. Thus, pursuant to Rule 26(a)(3)(B), pretrial disclosures were due on Monday, September 19, 2016. Cassell filed his pretrial disclosures on September 15, 2016, so his disclosures were timely under Rule 26(a) and the Court's scheduling order.

Even though Cassell's disclosures were timely under Rule 26(a) and the Court's pretrial scheduling order, the United States argues that Cassell's financial documents should have been disclosed earlier in discovery. [DN 62 at 2.] In its first set of interrogatories, the United States asked Cassell to "identify what evidence . . . you intend to introduce at trial to prove each category of damages" and to "[p]roduce for inspection and copying each exhibit or document that you intend to introduce at trial." [DN 62-1 at 5-6.] In response, Cassell provided a calculation of his damages and stated, "Plaintiff has not determined what documents will be introduced at trial in this matter. Plaintiff will amend this answer in a timely manner." [DN 62-2 at 3-4.] Rule 26(e) requires parties to supplement their discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." Fed. R. Civ. P. 26(e)(1)(A). Furthermore, the agreed deadline for supplemental discovery in this case was forty-five days prior to trial, September 5, 2016. [DN 7.]

According to the United States, Cassell did not disclose the existence of his financial documents until September 15, 2016, when he filed his witness and exhibit list. [DN 50.] The documents themselves were not made available until October 3, 2016, when Cassell tendered copies to the Court. [DN 70.] Assuming Cassell's financial records fall within the scope of the United States' previous discovery requests, Cassell failed to supplement his discovery responses

13

in a timely manner as required by Rule 26(e). Pursuant to Rule 37(c), "If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Here, Cassell has provided minimal justification as to why his financial records were not disclosed prior to the supplemental discovery deadline. *See* [DN 65.] Nevertheless, the United States has not shown that it will be unfairly prejudiced by the introduction of Cassell's financial records. In its motion, the United States asserts that "allowing these documents . . . circumvents the entire structure of discovery rules upon which a Defendant must rely in order to know, prepare, and try a case." [DN 62 at 3.] Additionally, the government claims that "[e]xcusing such late disclosure prejudices the innocent party, forcing them to divert time, attention and preparation just before trial due solely to the other party's failure to abide by obvious rules, and at the expense of applying finite preparation time to other facets of the case." [*Id*. at 3-4.] However, during the final pretrial conference, the United States conceded that it would allow Cassell to testify regarding his damages, including his lost wages. [DN 72 at 17-18.] If the government is prepared to allow Cassell's oral testimony regarding his earnings, it is unclear how it would be prejudiced by allowing this same evidence in documentary form. Ultimately, Cassell's disclosure of his financial records was untimely, but harmless. Therefore, Rule 37(c) allows Cassell's records to be received as proof, provided they are otherwise admissible.

The United States also moves to exclude Cassell's 2013, 2014, and 2015 tax returns on relevance grounds. [DN 62 at 4.] Cassell and his wife filed jointly in those years, and those returns contain information regarding her earnings as well as Cassell's. The Court agrees that much of the information contained in the tax returns, including Lisa Cassell's earnings, is not

relevant in determining Cassell's damages. However, the Court sees no reason why the irrelevant portions of Cassell's tax returns cannot be redacted or excluded.

Finally, the United States argues that, even if Cassell's tax returns are admissible, Cassell's most recent pay stub should not be admitted because it provides only a snapshot of his current earnings. Cassell has represented to the Court that he intends to use only the year-to-date earnings figure contained on the pay stub. The United States agrees that such a use would be permissible, and again, the Court sees no reason why irrelevant or misleading portions of the pay stub cannot be redacted. As such, the United States' motion to exclude Cassell's financial documents [DN 62] is DENIED.

**Order**

For the foregoing reasons, the Court, having considered Defendant's motions, and being otherwise sufficiently advised, IT IS HEREBY ORDERED:

(1) Defendant's Motion in Limine to Preclude Evidence or Argument That Plaintiff was not a Probationary Employee at the Time of His Termination [DN 55] is GRANTED;

(2) Defendant's Motion in Limine to Exclude Evidence or Argument that Differently Situated Employees Are Comparators [DN 56] is GRANTED; and

(3) Defendant's Motion in Limine to Exclude Exhibits [DN 62] is DENIED.

```
CC: Counsel of Record
```